UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brent Gisslen,

Plaintiff,

v.

City of Crystal, a municipality,
E. Gary Joselyn, individually
and in his official capacities;
Thomas A. Mathisen, individually
and in his official capacities;
and Jerry Dulgar; individually
and in his official capacities,

Defendants.

Civil File No. 00-1302 (MJD/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court upon Defendants' Motion to Dismiss. In the underlying Complaint, Plaintiff alleges six causes of action against the City of Crystal and three city officials for civil rights violations arising out of a condemnation action adjudicated in state court. For the following reasons, the Court grants Defendants' Motion.

**BACKGROUND**

Plaintiff Brent Gisslen ("Gisslen") owned property at 6427 41st Avenue North in the City of Crystal. This property included approximately four acres in the metro area, most of Hagemeister Pond, and a separate parcel extending from Douglas Avenue North in Crystal. Part of the land is located in a 100-year flood plain. Gisslen claims that he has suffered constitutional violations at the hands of the City of Crystal ("the City") and its officials E. Gary Joselyn ("Joselyn"), Thomas A. Mathisen ("Mathisen"), and Jerry Dulgar ("Dulgar").

FILED NOV 7 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD NOV 7 2001
DEPUTY CLERK

Gisslen asserts that his dispute began in 1990, when the City commenced condemnation proceedings for a sewer easement on his property. Ultimately, the City was granted a sewer easement and required to maintain it, and Gisslen was awarded $2,850.00 and the right to keep a fence on the property line. Then, in 1991, the City offered to purchase Plaintiff's property for $100,000. The City asserts that its offer was part of a comprehensive plan to create open space and protect natural resources by adding to the existing park system. Plaintiff did not accept that offer, although there is some indication that Plaintiff had asked for $2.00 per square foot.

Thereafter, between 1991 and 1996, Gisslen complained numerous times to the City, the Department of Natural Resources ("DNR"), the Minnesota Pollution Control Agency ("MPCA"), and the Board of Water and Soil Resources ("BWSR") about the City's failure to maintain the sewer easement on the property and Hagemeister Pond. Gisslen's complaints concerned litter dumping, illegal pumping, sediment deposits, disposal of crushed asphalt on the land, and flood plain building violations.

In 1996, Gisslen retained an attorney to assist him in pursuing his complaints against the City. Gisslen and his attorney met with Mathisen, the City Engineer, and others about the build-up of sediment in Hagemeister Pond. Gisslen asserts that Mathisen was belligerent toward him and used profanity during the meeting. Months later, Plaintiff and his attorney met with Mathisen and various state officials at Gisslen's property to assess the condition of the pond with respect to sediment build-up. According to Gisslen, both the MPCA and DNR

notified the City that the failure to install a "riprap" or headwall at the sewer outlet had caused a significant sediment build-up, and the resulting erosion would damage the wetlands and possibly cause toxic soil development. Removal of the sediment would require a special permit. Although the City did not dredge or remove the sediment, soil boring testing and dredging negotiations continued into Fall 1997. Gisslen asserts that the City's failure to maintain and monitor the pond damaged his property and rendered it in a state of disrepair.

Also during this period, the City cited Gisslen for various infractions. In 1991, Gisslen began a grading project on his land after, he asserts, receiving approval from the City's Building Inspector. According to Gisslen, days later, Dulgar, the City Manager, visited the property and ordered Gisslen to stop the project immediately. Thereafter, the City Council "tabled" his request for a grading permit. In 1992, the City's Building Inspector cited Gisslen for failure to obtain a rental license in violation of the City's Housing Code. In 1997, the City ordered him to stop demolition of the house on his property until he had secured the building by boarding windows and doors, posting "no trespassing" signs, and fencing the property.

In 1996, Joselyn, a City Council Member and Gisslen's neighbor, identified Gisslen's property for acquisition by the City for a nature trail and passive area. Members of the City Park and Recreation Commission toured the property without Gisslen's permission, and developed a policy statement to acquire open space for park land. In 1997, the City applied for a DNR grant to develop the property as a "natural and scenic area," but the grant was

denied. The City again offered to purchase Gisslen's property, and threatened condemnation proceedings if an agreement could not be reached. Gisslen, through his attorney, advised the City that he was not interested in selling his property to the City and that he had purchased the property to construct his family's "dream home."

In late 1997 and early 1998, the City, through its City Council, approved resolutions to take Gisslen's property by eminent domain proceedings. The City then commenced the condemnation action to take Gisslen's property, and the Honorable Phillip D. Bush heard the parties' arguments on the matter. On March 13, 1998, Judge Bush issued his Findings of Fact, Conclusions of Law, and Order Appointing Commissioners, which stated:

> 1. [The City] possesses the right of eminent domain and has properly exercised the same herein.
>
> 2. The taking of the fee simple title described in the petition, as amended, is for a public purpose, is necessary and convenient in furtherance of [the City's] plans to use the lands for park, recreation and open space purposes, and is such as is authorized by law.

See City of Crystal v. Brent A. Gisslen et al., No. CD-2478 (Henn. County Dist. Ct. Mar. 13, 1998). The Court also appointed three Commissioners to determine compensation for the condemnation of Gisslen's property. On November 13, 1998, the Commissioners filed an Award of Damages, which determined the value of Gisslen's property at $158,500. On December 18, 1998, Gisslen appealed the Commissioners' Award to the state district court. The City filed a cross appeal on December 23, 1998. As a result of a jury trial held between April 26-29, 1999, the jury determined that the fair market value of Gisslen's property was

$192,553. On June 14, 1999, the City and Gisslen entered into a stipulation of settlement whereby the City paid the compensation amount determined by the jury in exchange for a waiver of Gisslen's right to appeal the damage award. Accordingly, the City satisfied the judgment on June 15, 1999. Sometime thereafter, the City purchased the lot directly adjacent to the east of Plaintiff's property. Gisslen asserts the City sold the land to private developers by bid and that a residential home was constructed on the lot in 2000. The City maintains that the property is being used, in part, for park purposes, and that it is involved in negotiating the acquisition of other properties surrounding Hagemeister Pond for the purpose of establishing a park.

Gisslen commenced the present action on May 25, 2000, seeking damages against the City and it officials for alleged civil rights violations stemming from the events related above. Specifically, Gisslen alleges violations of free speech, due process, equal protection, and just compensation; conspiracy to violate these rights; and failure to prevent the conspiracy to violate these rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.

**DISCUSSION**

The Rooker-Feldman doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). This doctrine forecloses not only straightforward appeals, but also more indirect attempts by federal plaintiffs to undermine

state court decisions. Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000). Indeed, the Rooker-Feldman doctrine prohibits federal courts from exercising jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court. Id. A federal claim is inextricably intertwined with a state court judgment if the claim "succeeds only to the extent that the state court wrongly decided the issue before it [or] if the relief requested would effectively reverse the state court decision or void its ruling." Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995); see also Snider v. City of Excelsior Springs, Mo., 154 F.3d 809, 812 (8th Cir. 1998). The claims need not be identically named or pled, as "federal plaintiffs cannot by artful pleading obtain a hearing of disguised state court appeals that would otherwise be subject to a Rooker-Feldman bar." Lemonds, 222 F.2d at 494. Accordingly, deciding whether Rooker-Feldman controls this case "requires determining exactly what the state court held." Charchenko, 47 F.3d at 983.

Here, Gisslen brings his claims as free speech, due process, equal protection, and just compensation violations under federal statutes and seeks damages and attorneys' fees. As pled, however, his claims would essentially require this Court to find that the state court decided the condemnation matter wrongly. In the Complaint, Gisslen alleges that Defendants retaliated against him for speaking out on matters of public concern (Count I), singled him out for the taking of his property (Count II), condemned his property "hurriedly" to prevent him from pursuing legal rights with respect to the sewer maintenance issues (Count IV), used

eminent domain proceedings to avoid paying him just compensation (Count III), conspired to violate his rights (Count V), and neglected to prevent a conspiracy of violation of his rights (Count VI). Clearly, Gisslen is "reclothing" his challenge of the condemnation proceedings "in new constitutional garb." Lemonds, 222 F.3d at 494. As noted, the state court entered an order approving condemnation proceedings on Gisslen's property and appointing three Commissioners to determine the amount of compensation, if any, Gisslen was entitled to. The state court judgment specifically found that the taking of Gisslen's property was "for a public purpose, [was] necessary and convenient in furtherance of [the City's] plans to use the lands for park, recreation and open space purposes, and is such as is authorized by law." See See City of Crystal v. Brent A. Gisslen et al., No. CD-2478 (Henn. County Dist. Ct. Mar. 13, 1998). Any ruling on Gisslen's present claims would require this Court to invalidate the state court judgment, and otherwise address claims that are "inextricably intertwined" with that judgment. Indeed, this Court would be required to find that the taking of Gisslen's property was neither "for a public purpose," "necessary and convenient in furtherance of [the City's] plans to use the lands for park, recreation and open space purposes," nor "authorized by law." Rather, this Court would be required to find that the taking was in retaliation for Gisslen's complaints and for the purpose of avoiding paying him just compensation. This Court would be required to determine just compensation. Accordingly, the claims are precluded under Rooker-Feldman and this Court lacks subject matter jurisdiction.

**CONCLUSION**

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Clerk Doc. No. 16) is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: Nov. 6, 2001

Michael J. Davis
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*